IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | Criminal No. 17-273 |
| | ) | |
| DEVON DIXON | ) | |

### **DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

AND NOW, comes the defendant, Devon Dixon, by his attorney, and with respect to the above captioned matter, he represents the following:

1. On October 10, 2017, a grand jury returned an Indictment charging Mr. Dixon with four crimes. Each is alleged to have occurred on or about October 20, 2016.

2. They include:

> Distribution of Heroin and Fentanyl Resulting in Serious Bodily Injury, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C);
>
> Possession with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C);
>
> Felon in Possession of a Firearm, in violation of 18 U.S.C. §922(g)(1); and
>
> Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. §924(c)(1)((A)(I).

3. On October 20, 2016, certain items of physical evidence which are the subject of this Motion were seized by

policemen from behind the dashboard of the Chevrolet Impala which Mr. Dixon had been driving that day.  That evidence includes 105 stamp bags containing fentanyl and heroin, a baggie containing suspected crack cocaine, a SIG Sauer 9mm P250 pistol, and  corresponding ammunition.

    4.   Also seized, incident to Mr. Dixon's arrest was a sum of United States Currency[1] and three cellular phones.

    5.   The seizure of the foregoing items was preceded by the following set of events.

    6.   At roughly 4:37 p.m. on October 20, 2016, a confidential informant gave a policeman an uncorroborated tip; to-wit, that the driver of the passing Impala had sold him heroin.

    7.   In unidentified automobiles, investigating officers--in or around the 400 block of Lobinger Avenue in the Municipality of Braddock, Pennsylvania--began following the Impala as it continued to move in traffic.

    8.   The investigating officers conducted a traffic stop of the Impala "on the Whitaker side of the Rankin Bridge".

    9.   Immediately following that stop, the officers removed the driver and the front seat passenger from the Impala.

---

[1] Reports indicate that sum is either $1,073.00 or $2,066.00.

2

10.  The driver was Mr. Dixon; the passenger was Rondelle Prysock.

11.  Once the identities of both the men was determined, police discovered that each man was the subject of outstanding arrest warrants.

12.  The original traffic stop was conducted in the absence of probable cause that a moving violation had occurred.

13.  It was also conducted without contemporaneous knowledge that an occupant of the Impala was the subject of an outstanding arrest warrant.

14.  Accordingly, the traffic stop, and the ensuing searches and seizures were conducted in violation of Mr. Dixon's right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

15.  Assuming <u>arguendo</u> that the original stop did not violate Mr. Dixon's Fourth Amendment rights, then in the alternative, the search and seizures behind the Impala's dashboard violates those rights.

15.  In particular, while a warrantless search of portions of the Impala are authorized pursuant to the "Inventory Exception" to the Fourth Amendment warrant

3

requirement, the intrusiveness and scope of the instant search--as documented by the photographs appended hereto as Joint Exhibit A--reveal that the search and ensuing seizures do not fall within the scope of the Inventory Exception. <u>See</u>, e.g., <u>United States v. Kennedy</u>, 437 F.3d 1136 (8th Cir. 2005); <u>United States v. Lugo</u>, 978 F.2d 631 (10th Cir. 1992).

16. Instead, prior to breaking open the vent on the Impala's dashboard, and proceeding to search the area in question, the police must have first obtained a search warrant, the terms of which must have established probable cause to believe that the area behind the dashboard contained evidence of a crime.

17. The items located behind the dashboard, and the evidence otherwise secured as proceeds of the original stop of the Impala are "fruit of the poisonous tree". Those items must be suppressed as evidence at trial.

18. Furthermore, the "fruit of the poisonous tree" also includes the various admissions and statements Mr. Dixon made on October 20, 2016 during a custodial interrogation following his arrest that day.

WHEREFORE, the Defendant Devon Dixon respectfully requests that the Court schedule and conduct an evidentiary hearing. He further requests that the Court suppress as evidence at trial, the evidence derived from the October 20, 2016 stop, searches and seizures, arrest and interrogation.

Respectfully submitted,

s/ Thomas Livingston
Thomas Livingston
Assistant Federal Public Defender
Attorney ID No. 36949